**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re: MARK and RONDA RONES,           Chapter 13

              Debtors.           Case No. 14-35899 (CMG)

- - - - - - - - - - - - - - - - -- - - - - - - - - -X

**OPINION**

**APPEARANCES:**

LEVITT & SLAFKES, P.C.
Bruce H. Levitt, Esq.
Attorneys for the Debtors

GRIFFIN ALEXANDER, P.C.
Mitchell E. Zipkin, Esq.
Attorneys for Whispering Woods Condominium Assoc., Inc.

Albert Russo, Esq.
STANDING CHAPTER 13 TRUSTEE


**CHRISTINE M. GRAVELLE, U.S.B.J.**


I.      **INTRODUCTION**

      Whispering Woods Condominium Association, Inc. ("Whispering Woods")

objects to confirmation of the Chapter 13 plan (the "Plan") of Debtors, Mark William

Rones and Ronda Jacqueline Rones ("Debtors").  The Plan proposes to pay pre-petition

condominium fees in an amount equal to the statutory priority allowance of six months

accrued fees.  The balance of the claim is to be treated as unsecured.  Whispering Woods

alleges a secured claim in the amount of $18,761.76 and asserts the anti-modification

provisions of section 1322(b)(2) of the Code[1] prohibit Debtors from bifurcating its lien. After considering the submissions and arguments of the parties, the Court finds that the condominium association lien (the "Lien") is a security interest, that its treatment in the Plan is not a bifurcation, and that the balance due, after payment of the amount given statutory priority, may be stripped off as it is wholly unsecured.

## II.    JURISDICTION AND VENUE

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended October 17, 2013, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. Pursuant to Fed. R. Bankr. P. 7052, the Court issues the following findings of fact and conclusions of law.

## III.    FACTS AND PROCEDURAL HISTORY

The facts relevant to this decision are not in dispute. Debtors own a condominium unit at 4191 Bayberry Court, Monmouth Junction, New Jersey (the "Property"), which was made part of Whispering Woods in a master deed recorded on January 20, 1984 with the Middlesex County Clerk (the "Master Deed"). The Master Deed references the New Jersey Condominium Association Act (the "Act") and, as the Act requires, the bylaws of Whispering Woods (the "Bylaws"). The Master Deed, the Act, and the Bylaws contain the rules and regulations of Whispering Woods. Although the parties did not provide a copy of the deed to the Property, the Court assumes that it references the Master Deed and Bylaws, in accordance with the Act.

---

[1] References to the Code are to the United States Bankruptcy Code, 11 U.S.C. §§101, et. seq.

Debtors failed to pay certain fees and assessments as required in the Bylaws.   The Master Deed states that the fees and assessments constitute a lien on the Property "… which lien shall be prior to all other liens except (1) assessments, liens, and charges for taxes past due and unpaid on [the Property] and … (2) bona fide mortgage instruments duly recorded …"  See Master Deed, ¶ 12.  The Act contains a similar provision and establishes a procedure for filing a Notice of Lien.  It establishes payment priority for a condominium lien in a limited amount.

Pursuant to the Act, Whispering Woods filed a Notice of Lien for the unpaid fees and assessments on March 21, 2013 in the amount of $6,085.85 (the "Lien").  The lien was later amended to reflect an outstanding balance of $18,761.76.  Debtors filed this Chapter 13 bankruptcy on December 30, 2014, after three unsuccessful attempts to confirm a plan in a prior case.

The petition and schedules show a first mortgage on the Property in an amount that exceeds the value of the Property.  Debtors list Whispering Woods as a creditor holding a claim in the amount of $14,324.65, the secured portion of which being only $1,494.00.  The Plan proposes payment in full of the secured portion of Whispering Woods claim and treats the balance as unsecured.

Whispering Woods objected to its treatment under the Plan claiming that the Code prevents bifurcation of the Lien because its sole collateral is Debtors' principal residence and that the priority treatment provided in the Act partially secures the Lien.  The parties briefed their positions and appeared before the Court for oral argument on March 4, 2015.

**IV.    LEGAL ANALYSIS**

**(i)    A Lien for Condominium Charges, Expenses and Assessments is in the Nature of a Consensual Lien.**

3

Analysis of the issue presented in the objection implicates several sections of the Code as well as state law. *See* 11 U.S.C. §§ 506(a)(1) and 1322(b)(2); N.J. STAT. ANN. § 46:8B-21. Section 506(a) limits the amount of an allowed secured claim to the extent of the value of the collateral and provides allowance of the balance as an unsecured claim. *See* 11 U.S.C. §506(a)(1). Section 506(a) allows debtors to modify secured claims by "stripping" or "cramming" down the secured portion of the claim to the value of the collateral when the value of the collateral is less than the secured portion. This procedure is also referred to as "bifurcation" of a secured claim. Bifurcation is available to Chapter 13 debtors. *See* 11 U.S.C § 103(a); <u>Nobleman v. Am. Sav. Bank</u>, 508 U.S. 324, 328 n. 3 (1993). But section 1322(b)(2) prohibits bifurcation of a claim secured "…only by a security interest in real property that is the debtor's principal residence…" *See* 11 U.S.C. §1322(b) (2); <u>Nobleman</u>, 508 U.S. at 332.

The Act, adopted in 1970, established "a comprehensive scheme for regulating condominiums and their associations." <u>Brandon Farms Prop. Owners Ass'n v. Brandon Farms Condo. Ass'n</u>, 852 A.2d 132, 137 (N.J. 2004) (citing <u>Fox v. Kings Maint. Ass'n</u>, 770 A.2d 707, 712 (N.J. 2001)); N.J. STAT. ANN. § 46:8B-1, et. seq. Each unit owner is responsible for a proportionate share of the common expenses, which includes "(i) all expenses of administration, maintenance, repair and replacement of the common elements; (ii) expenses agreed upon as common by all unit owners; and (iii) expenses declared common by [the Act] or by the master deed or the bylaws." *See* <u>id.</u> at 138 (citing N.J. STAT. ANN. § 46:8B-3e). A unit owner is presumed to have agreed to pay his proportionate share of common expenses. *See* <u>Thanasoulis v. Winston Towers 200 Ass'n, Inc.</u>, 542 A.2d 900, 903 (N.J. 1988) (association comprised exclusively of unit owners

4

who, through their individual deeds, automatically become members).  The Act

empowers a condominium association to manage its common areas and imposes a duty

on the association to promulgate rules and regulations, in its master deed and bylaws, to

implement its management responsibilities.  *See* Gittleman v. Woodhaven Condo. Ass'n,

972 F. Supp. 894, 902 (D.N.J. 1997).

The relevant provisions of the Act featured in the case before this Court provide:

a.    The association shall have a lien on each unit for any unpaid
assessment duly made by the association for a share of common expenses
or otherwise, … upon proper notice to the appropriate unit owner, . . .
Such lien shall be effective from and after the time of recording in the
public records of the county in which the unit is located of a claim of lien
… Such claim of lien shall include only sums which are due and payable
when the claim of lien is recorded. . . Except as set forth in subsection b.
of this section, all such liens shall be subordinate to any lien for past due
and unpaid property taxes, the lien of any mortgage to which the unit is
subject and to any other lien recorded prior to the time of recording of the
claim of lien.

b.    A lien recorded pursuant to subsection a. of this section shall have
a limited priority over prior recorded mortgages and other liens, except for
municipal liens or liens for federal taxes, to the extent provided in this
subsection.  This priority shall be limited as follows:
1) to a lien which is the result of customary condominium assessments as
defined herein, the amount of which shall not exceed the aggregate
customary condominium assessment against the unit owner for the six-
month period prior to the recording of the lien…
N.J. STAT. ANN. § 46:8B-21.

The Code defines "lien" as "a charge against or interest in property to secure

payment of a debt or performance of an obligation," and recognizes three types of liens:

judicial, statutory, and consensual.  *See* 11 U.S.C. §101(37) ("lien" defined); Graffen v.

Philadelphia, 984 F.2d 91, 96 (3d Cir. 1992); Young v. 1200 Buena Vista Condos., 477

B.R. 594, 598 (W.D. Pa. 2012); *see also* H.R. REP. NO. 595 at 312 (1977), *as reprinted in*

1978 U.S.C.C.A.N. 5963, 6269.  A judicial lien is defined as a lien, "obtained by

judgment, levy, sequestration, or other equitable process or proceeding." 11 U.S.C.

101(36). A statutory lien is defined a lien, "arising solely by force of a statute on

specified circumstances or conditions . . . but does not include a security interest or

judicial lien, whether or not such interest or lien is provided by or is dependent on a

statute and whether or not such interest or lien is made fully effective by statute." 11

U.S.C. 101(53). A consensual lien is a lien or security interest that is created by consent

or by agreement, such as a mortgage agreement. *See* U.S.C. 101(51); In re Pfiester, 449

B.R. 422, 426 (Bankr. D.N.M. 2011) ("Congress intended for consensual liens or liens by

agreement to be defined as security interests"). Section 1322 (b)(2) of the Code prohibits

bifurcation of claims secured by *security interests*, that, pursuant to the Code, are

consensual liens. *See* 11 U.S.C. §101 (51).

    While the Code does not explicitly state that the three types of liens are mutually

exclusive, the legislative history of the Code makes clear that the "three categories are

mutually exclusive and are exhaustive except for certain common law liens." H.R. REP.

NO. 595 at 312, *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6269. *See also* Young v. 1200

Buena Vista Condos., 477 B.R. 594, 598 (W.D. Pa. 2012). The Court must first

determine the character of the Lien.

    The Lien appears to have a basis in both the Whispering Woods Master Deed and

By-laws, and in the Act. *See* In re Robinson, 231 B.R. 30, 34 (Bankr. N.J. 1997). All

three sources are regarded as defining the "rights and responsibilities of a condominium

unit owner and a governing association." Alexander v. Nat'l Fire Ins. of Hartford, 454

F.3d 214, 220 (3d Cir. 2006) (citing Davis v. Metuchen Gardens Condo. Ass'n, 790 A.2d

184, 185 (N.J. Super. Ct. App. Div. 2002)).

As a preliminary matter, this Court notes that the Code's definition of statutory lien is very narrow.  It describes a statutory lien as arising *solely* from a statute.  *See* 11 U.S.C. §101(53).  It specifically excludes security interests and judicial liens even in those cases where the security interest, also referred to as a consensual lien, or the judicial lien is dependent upon the existence of the statute to be fully effective.  *See* id. By itself, this would support this Court's finding that the Lien is a consensual lien because it arises from two sources, the statute and the Master Deed and Bylaws.  Since the Lien can only be characterized as one type, the Code's definition of a statutory lien would instruct reliance on the Master Deed and Bylaws as a second source, which would result in the characterization of the Lien as a security interest.

While it appears to this Court that the Code definitions of various liens are clear on their face, courts are split on their classification of condominium liens.  *Compare* In re Robinson, 231 B.R. 30, 34 (Bankr. N.J. 1997) (notes condominium lien is security interest); In re Beckley, 210 B.R. 391, 393 (Bankr. M.D. Fla. 1997) (debt owed to association in form of final judgment remains a security interest); Phillippy v. Corkscrew Woodlands Assocs., Inc. (In re Phillippy), 178 B.R. 67, 69-70 (Bankr. M.D. Pa. 1994) (debt owed to association pursuant to notice of lien remains security interest); In re Bland, 91 B.R. 421, 422 (Bankr. N.D. Ohio 1988) (condominium liens are security interests, not judicial liens, for purposes of 11 U.S.C. §522(f)) *with* In re Green, 516 B.R. 347, 351 (E.D. La. 2014) (condominium lien arises from statute, not Declaration); Young v. 1200 Buena Vista Condos., 477 B.R. 594, 602 (W.D. Pa. 2012) (condominium liens are statutory); In re Lopez, 512 B.R. 663, 671 (Bankr. Colo. 2014) (condominium

7

association lien generally recognized as statutory).   The difference of opinions in courts around the country warrant a closer look in this Court's analysis.

In re Robinson is the only decision issued by a court in the District of New Jersey to address the characterization of a condominium lien.  *See* In re Robinson, 231 B.R. at 30.  But, the characterization was not central to the decision.  In In re Robinson, the condominium association filed a secured claim that the debtor sought to strip off in her chapter 13 plan, claiming that it was wholly unsecured.  In In re Robinson, Judge Wizmur held that the anti-modification provisions of section 1322 (b)(2) applied even when a claim secured solely by the debtor's principal residence was wholly unsecured.  *See* id. at 33-34 (citing In re Barnes, 207 B.R. 588 (N.D. Ill. 1997); In re Jones, 201 B.R. 371 (Bankr. D.N.J. 1996)).  Before reaching her conclusion, the judge stated, without explanation and in a footnote, that a condominium association lien is a security interest.  *See* id. at 32 n. 1.  In the same footnote, the In re Robinson court noted the confusion caused by the fact that condominium liens arise from both the association's bylaws and state law.  *See* id.  The Third Circuit Court of Appeals overruled In re Robinson, allowing the strip off of wholly unsecured security interests in the debtor's principal residence.  *See* In re McDonald, 205 F.3d 606 (3d Cir. 2000).  The case before this Court presents the opportunity to expand on Judge Wizmur's footnote.

The question presented to those courts that hold a condominium lien is a security interest did not ask whether condominium liens could be characterized as statutory, only whether they should be characterized as judicial.  *See, e.g.*, In re Beckley, 210 B.R. at 393 (holding that a debt owed to a homeowner's association in the form of a final judgment remains consensual lien); Phillippy, 178 B.R. at 69-70 (Bankr. M.D. Pa. 1994)

(recordation of claim of lien pursuant to condominium declaration does not change consensual lien to judicial lien); In re Bland, 91 B.R. at 422 (condominium liens that can be judicially foreclosed, are security interests, not judicial liens).  Nevertheless, the analyses are instructive.  All find that the debtors, when they agreed to purchase a condominium unit, directly or indirectly agreed to be bound by the condominium declarations and bylaws, which created the liens.  Phillippy, 178 B.R. at 70; In re Beckley, 210 B.R. at 393; In re Bland, 91 B.R. at 423.  The cases find that the fact that the means used to effect the agreement was a court judgment did not change the initial agreement that gave rise to the lien.  See Phillippy, 178 B.R. at 70; In re Beckley, 210 B.R. at 393; In re Bland, 91 B.R. at 423.  Although the form of the lien may be judicial, "substantively, the lien stems from a security interest through the Declaration."  In re Beckley, 210 B.R. at 393.  The same reasoning can be applied to statutory liens and this Court will do so later in this decision.

The decisions concluding that condominium liens are statutory are distinguishable on their facts or are simply not persuasive to this Court.  The Young court cites four cases to support its finding that the condominium lien is statutory.  See Young, 477 B.R. at 602. None of the cases discuss the impact of a master deed or declaration. In re Johnston, 108 B.R. 81 (W.D. Pa. 1989) (holding lien on condominium for which debtor obtained final judgment to be a perfected statutory lien); In re Stern, 44 B.R. 15, 18 (Bankr. D. Mass. 1984) (classifying a condominium trustees' lien as statutory based on the term's definition in Massachusetts statutes); In re Nentwick, 79 B.R. 145, 146 (Bankr. N.D.N.Y. 1987) (classifying a condominium lien as statutory based on New York statute); In re Eatman, 182 B.R. 386, 390-91 (Bankr. S.D.N.Y. 1995) (finding that a lien for unpaid

condominium fees, partially secured upon filing by homeowners' association, is a statutory lien). In fact, the existence of a master deed or declaration is not mentioned in those decisions. One of the cases did not make an analysis because the parties had agreed to the statutory basis of the lien. *See* In re Nentwick, 79 B.R. at 146. Another case addressed the issue peripherally while deciding a motion for relief from stay brought by the condominium association. *See* In re Eatman, 182 B.R. at 391. In In re Eatman, the court converted the debtor's case, granted a motion for relief from stay and awarded sanctions to the condominium association. Id. at 396. The debtor's bad faith and his failure to address the substantial secured claim ($100,000.00) of the condominium association were central to the holdings of the In re Eatman court. In fact, in finding that the plan would not be feasible if the debtors addressed the secured claim of the condominium association, the In re Eatman decision implies that the claim cannot be modified, similar to what would result if it had found the lien to be consensual. Id. at 393.

The court in In re Lopez and In re Green were faced with different statutory language than that contained in the Act. In re Lopez, 512 B.R. 663 (Bankr. D. Colo. 2014); In re Green, 516 B.R. 347 (E.D. La. 2014). In re Lopez, while factually similar, is distinguishable due to the differences in language between the Colorado Common Interest Ownership Act (the "Colorado Statute") and the Act. *See* In re Lopez, 512 B.R. at 667. In re Green analyzes the Louisiana Condominium Act, which establishes a "privilege," unique to that state. *See* In re Green, 516 B.R. at 350.

As explained in In re Lopez, the Colorado Statute specifically refers to the condominium association lien as a statutory lien. In re Lopez, 512 B.R. at 670. The

court noted that the Colorado Statute "defines 'security interest' as an 'interest in real estate or personal property created by contract or conveyance which secures payment or performance of an obligation, including a lien created by a mortgage, deed of trust . . . and any consensual lien  . . . intended as security for an obligation.'" Id. at 667 (citing COLO. REV. STAT. § 38-33.3-316).  The In re Lopez court discounted conflicting language in the condominium association declaration, finding the condominium lien was not entered into by agreement, and therefore could not be considered a security interest as defined in the Bankruptcy Code.  In re Lopez, 512 B.R. at 670.  Based on its observation that the condominium association lien is not a security interest, either as defined in the Code, the Colorado Statute, or the condominium declaration, the Lopez court characterized the lien as statutory.  See id. at 671.  It went on to note "even if some language in the Declaration attempted to make the [condominium] lien a 'security interest,' generally when such language conflicts with the applicable statutory language, the statutory language controls." See id. at n. 8 (citation omitted).

The Act contains no such reference to a condominium lien as statutory, nor does it define the term "security interest."  The language of the Master Deed does not conflict with the statutory language.  Further, New Jersey case law presumes agreement to pay condominium fees when a deed to a unit is accepted.  See Thanasoulis, 542 A.2d 900, 903 (N.J. 1988).

The court in In re Green reviewed most of the cases cited herein and, finding no express agreement to create a lien through the condo declaration, held that the association's "privilege," which could be provided only by statute, defined the nature of its lien.  In re Green, 494 B.R. 231, 235 (Bankr. E.D. La. 2013) aff'd, 516 B.R. 347 (E.D.

La. 2014). The <u>In re Green</u> decision seems to indicate that the privilege applies to the

entire amount due, as opposed to the Act, which limits the priority amount to six months

of past due fees.  The <u>In re Green</u> court rejected the condominium association's

contention that by filing the declaration into the mortgage records it had transformed a

statutory privilege into a consensual security interest.  In doing so, the court found that,

"[i]n acquiring a secured interest in Debtor's property, Creditor was relying solely on the

privilege granted to it by the Act.  Indeed, it took all steps required by the Act . . .

Because a privilege arises as a matter of law, it is, by definition, a statutory lien." <u>In re</u>

<u>Green,</u> 516 B.R. 347, 351 (E.D. La. 2014).  This finding begs the question, then, what is

the purpose of the declaration?  The <u>In re Green</u> court noted that "security devices should

be strictly construed" and held that, absent the debtor's signature on the condominium

documents, there could be no consensual lien.  <u>Id.</u>  It distinguished the consensual nature

of mortgages, which require the mortgagor's signature.  <u>Id.</u>  This Court finds that the

Debtors' affirmative acts of bargaining for and recording the deed constitutes their

acceptance, which finding is consistent with New Jersey case law.

  This Court notes that the mere existence of a statute does not automatically

change the nature of consensual liens to statutory liens.  New Jersey regulates many

property interests in addition to condominium liens.  For example, mortgage liens are

regulated by statute, which are universally considered consensual liens and, therefore,

security interests.  *See, e.g.*, N.J. STAT. ANN. § 17:12B-11 (mortgage deemed first lien)

17:11C-51-89. (New Jersey Residential Mortgage Lending Act).  The passage of statutes

that outline requirements for mortgage documents and assign lien priorities does not

convert the characterization of a mortgage instrument to a statutory lien.  Neither does the

Uniform Commercial Code and state statutes based on it, that provide for the filing of forms to publically notice a security interest and that specify the information that must be contained in the form.

Two of the courts that determined a condominium lien is statutory noted that the classification of a lien depends on how and when the lien first arose.  *See* Young, 477 B.R. at 602; In re Stern, 44 B.R. at 19.  The court in Young, finding that a condominium lien arises by statute, held that any subsequent action taken in relation to that lien that could be seen as creating a security interest or judicial lien, cannot change the original statutory nature of the lien.  Young, 477 B.R. at 602.   In In re Stern, the court held that a lien arises when a benefit is conferred.  In that case, the court found that the benefit of the condominium lien was conferred when the Massachusetts condominium law was enacted because it created an automatic lien. In re Stern, 44 B.R. at 19.

Using the same line of reasoning as Young and In re Stern, this Court reaches a different conclusion.  This Court finds that no benefit is conferred until the unit owner purchases the condominium unit, thereby becoming a member of the association and obligated by its master deed and bylaws.  It is the act of purchasing the condominium unit, and voluntarily accepting and recording the unit deed, that gives rise to the lien.

If a condominium association wants to take advantage of the Act, it must file its master deed.  In order to gain the benefit of the super-priority lien provided by the Act, the condominium association must record a Notice of Lien in accordance with the Act. The Act bestows a priority to the condominium association for the "aggregate customary condominium assessment against the unit owner for the six-month period prior to the recording of the lien…" N.J. STAT. ANN. § 46:8B-21.  The fact that the Act provides a

statutory priority lien for a portion of the claim does not change the character of the lien as a security interest.

It appears that many courts addressing these issues use the same arguments to support different conclusions.  This Court is constrained to note that the points made by the various courts cited herein reasonably support both conclusions.  The question raised is essentially that of the chicken and the egg.  Which came first?

The condominium form of ownership existed before passage of the Act.  *See* Gittleman v. Woodhaven Condo. Ass'n, Inc., 972 F. Supp. 894, 902 n. 14 (D.N.J. 1997) (referencing Charles W. Pittman, Note, *Land Without Earth – The Condominium*, 15 U. FLA. L. REV. 203, 205 (1962) (cited in Siller v. Hartz Mountain Assocs., 461 A.2d 568, 570 n. 4 (N.J. 1983))  ("history of condominiums has been traced back to ancient Rome").  The Act defines "condominium" as "the form of ownership of real property under a master deed providing for ownership by one or more owners of units of improvements together with an undivided interest in common elements appurtenant to each unit."  N.J. STAT. ANN. § 46:8B-3(h).  By recording a master deed, the condominium submits to the provisions of the Act.   N.J. STAT. ANN. § 46:8B-3(m).  The Act acknowledges the right of condominium associations to draft its own rules and regulations in its master deed and bylaws, as long as they are not inconsistent with the Act.  *See* N.J. STAT. ANN. § 46:8B-8, -9, -13, -13.1.   It does not appear that the Act created the condominium form of ownership.  Instead, it regulates the form by imposing certain rights and responsibilities on an association, which is the governing body of the condominium.  *See* Gittleman, 972 F. Supp. at 900-01.  In Gittleman, the United States District Court for the District of New Jersey questioned whether the Act actually created

the condominium form of ownership and acknowledged that it does not appear that a condominium did not or could not exist without the Act.  *See* id. at 902.

The Master Deed for Whispering Woods acknowledges its intention of forming a condominium as provided by the Act.  *See* Zipkin Certification, ¶ 2, Jan. 9, 2015 (Doc. No. 16) (citing Ex. A).  It goes on to require payment of charges, expenses, and assessments, including a monthly fee, by each owner.  *See* id. at ¶ 3 (citing Ex. B).  It provides that said charges, expenses, and assessments shall constitute a lien that becomes effective on the first day of each month.  *See* id.  It notes that the lien shall be recorded pursuant to the Act.  *See* id.  The unit deed makes reference to the Act only in a definitional sense.  By bargaining for, voluntarily accepting, and subsequently recording, a deed to a condominium unit that incorporates the Master Deed and Bylaws, the unit owner agrees to be bound by the rules and regulations of each.  Debtors agreed to pay condominium assessments and consented to the Lien when they purchased the Property. This Court is persuaded that in purchasing a condominium unit, Debtors and Whispering Woods made an agreement that resulted in an alteration in their relationship and property rights.  *See* In re Bland, 91 B.R. at 422 (citing Wicks v. Wicks, 26 B.R. 769, 771 (Bankr. D. Minn. 1983) *aff'd*, 31 B.R. 591 (D. Minn. 1988)).  Debtors reaped benefits from the agreement and cannot choose to avoid the results of a failure to pay.  Id.

This Court finds that the Lien is a security interest.

**(ii)  Statutory Priority of Payment Does Change the Position of the Lien in the Chain of Title.**

The Act provides a simple method of perfecting the Lien and grants a portion of the Lien payment priority.  *See* N.J. Stat. Ann. § 46:8B-21(a) and (b).  It provides the

"lien shall be effective from and after the time of recording in the public records of the county in which the unit is located…," that it "shall include only sums which are due and payable when the claim of lien is recorded…," and that, except as to a limited amount, it "shall be subordinate to any lien for past due and unpaid property taxes, the lien of any mortgage to which the unit is subject and to any other lien recorded prior to the time of recording of the claim of lien." N.J. STAT. ANN. § 46:8B-21(a). The Act is clear that priority is granted only for an amount equal to six months' worth of the customary charges of the condominium association. It excludes the balance of the lien. It is an exception to the general rule of "first in time, first in right," whereby the oldest recorded lien maintains senior priority status. In limiting the amount a condominium association can collect, the Act addresses payment, not security.

As discussed above, it is the Master Deed, made effective through the unit deeds, that creates the Lien. It is consensual, not statutory. It cannot be both. The Master Deed and the Act contain virtually the same language regarding liens. The only difference in the Act is the addition of a streamlined procedure to record the Lien, and priority payment treatment of a limited portion of the Lien. It would have been impossible to make those provisions effective in the Master Deed. Legislative action is required to establish recording procedures for the public land records and to change the priority of claims against title to property. The language of the Master Deed recognizes this fact and states that the Lien is subordinate to real estate taxes and prior recorded instruments. The only source of the priority is the Act. The fact that the statute, subsequent to the creation of the Lien, provides a mechanism for partial payment through the grant of a priority of payment, does not elevate the collateral position of the Lien.

If the Court were to accept the position of Whispering Woods, that the statutory priority provided by the Act gives it the security necessary to be subject to the anti-modification provision, it would also have to accept that the Act provides additional security for the Lien.  That analysis would remove the Lien from the protection of the anti-modification clause.  Section 1322(b)(2) prevents modification of "a claim secured only by a security interest in real property."  *See* 11 U.S.C. § 1322(b)(2) (emphasis added).  If what Whispering Woods argues is correct, the Lien would be secured not only by the security interest set forth in the Master Deed, but also through the Act.  Without the Act, the Lien would clearly be wholly unsecured and could be stripped.  Section 1322(b)(2) would not apply even were this Court to find equity that secured a portion of the claim, as the security interest is not the only thing securing the Lien.  Once recorded the Act provided additionally security for the Lien.

This Court finds that the consensual character of the Lien, as set forth in the Master Deed and Bylaws, did not change as a result of the existence of the Act.  Nor did the character change when Whispering Woods recorded the Lien pursuant to the Act, making the limited priority of payment available to it.

### (iii)   A Security Interest in Debtors' Principal Residence May Be Modified If It is Wholly Unsecured.

Whispering Woods argues that that because the Act provides condominium associations with a limited priority over prior recorded mortgages and certain other liens, its claim is partially secured and may not be stripped off.  It contends that such treatment would be a modification of its rights as a secured creditor in violation of the anti-modification clause of 11 U.S.C. §1322(b)(2).  Debtors argue that, while they recognize

17

that the Plan must provide for payment of the six month limited priority lien under the

Act, there is no equity for the remaining lien, and therefore the Plan is not in violation of

the anti-modification clause.

The United States Supreme Court explained that section 1322(b)(2) prohibited a

Chapter 13 debtor from allowing as secured only that part of a mortgage equal to the

value of the principal residence and treating the balance due under the mortgage as

unsecured.  *See* Nobleman v. Am. Sav. Bank, 508 U.S. 324, 330-31 (1993).  The

Nobleman court found that, if any portion of the mortgage was secured by the principal

residence, it could not be crammed down as such treatment would be in violation of 11

U.S.C. 1322(b)(2).  *See* Nobleman, 508 U.S. at 330-31.  In a later opinion, the Third

Circuit Court of Appeals held that a wholly unsecured mortgage is not subject to the anti-

modification clause of 1322(b)(2).  *See* In re McDonald, 205 F.3d 606 (3d Cir. 2000).  In

this circuit, a junior mortgage may be crammed down, or "stripped," only if the value of

the principal residence is less than the amount due to a senior mortgage holder, leaving

no remaining value for the junior mortgage.  Id. at 613-14.

Additionally, as noted above, the Master Deed acknowledges that the Lien is

subordinate to real estate taxes and prior recorded instruments.  The Debtors and

Whispering Woods agreed to this and that agreement defines their relationship.  This

conforms to the reasoning in Nobleman, and highlights the distinguishable nature of a

mortgage versus a condominium association lien in New Jersey.  The Supreme Court in

Nobleman noted that allowing a mortgagor to cram down her claim to the value of the

property would modify her agreement with the mortgagee and modify the latter's rights.

*See* Nobleman, 508 U.S. at 331.  Nobleman recognized a major problem in allowing

reduction of a mortgage holder's claim to the value of a property in that it would require

modification of contractual rights as to terms such as interest and amortization rates,

affecting the amount of monthly payment and the term of the note.  *See* id. at 331.  Here,

the Act provides Whispering Woods with a statutory right to partial payment.  This right

is not modified by the Plan.  It embodies a simple, easily applied formula for the

allowance of payment of a limited portion of the Lien.  Unlike Nobleman, there is no

need for re-calculations or adjustments to the contractual relationship between the parties

as a result.

   As discussed above, the Act does not operate to secure the entire amount of the

Lien.  Because the amount due on the first mortgage exceeds the value of Debtors'

principal residence, the Lien is wholly unsecured and may be stripped off in the Plan.

   **(iv)**   **Amount Entitled to Priority Payment**

   The Act gives priority to a condominium lien in an amount that does "not exceed

the aggregate customary condominium assessment against the unit owner for the six-

month period prior to the recording of the lien."  *See* N.J. STAT. ANN. § 46:8B-

21(b)(1).  The lien cannot be increased by delinquencies incurred after the lien was filed.

*See* In re Robinson, 231 B.R. at 31, n. 1; In re Robinson, 2012 Bankr. LEXIS 1033, at *8-

9 (Bankr. D.N.J. March 2, 2012).

   "Property interests are created and defined by state law."  Butner v. United States,

440 U.S. 48, 54-55, 59 L.Ed. 2d 136, 99 S. Ct. 914 (1979).  Though the claim may be

wholly unsecured, Debtor may not strip off the portion of the claim entitled to statutory

priority.  The Court will allow the portion of the Lien given statutory priority in an

amount not greater than the assessment for the six month period prior to the recording of

the Lien.

   The Court will enter an Order consistent with this decision.


Dated: 6/11/15         /s/Christine M. Gravelle
                 United States Bankruptcy Judge